Ray D. Bowen, Jr., Council for Recurrent Asphalt Professionals, Inc. Ellen Wayne Rosely, Council for Appalachian-Darren Davis. Your Honor, if I may reserve five minutes for rebuttal. We'll do that. I want you to pick that microphone. We're going with the one on your right. Thank you very much. As Your Honors know, this case involves a really important issue that doesn't have a lot of attention, and that really applies to all of us who practice in bankruptcy. And that is, in a 523 action, where it's not consumer-based, is the party who brings the 523 adversary proceeding subjecting itself to attorney's fees if it does not prevail. And in this case, the bankruptcy court, I believe, again, Your Honor used the word conflated, which is a good word, I believe the bankruptcy court conflated two lines of thinking and brought them into a line of thinking that does not apply, that is an incorrect ruling, and did so because it seemed to fit. Basically, the judge found that 1717 of the California Civil Code does not apply to this case. If California Civil Code 1717 does not apply, then the only way we're going to get to attorney's fees is some other code section. So let's put 1717 aside. The only other code sections the court cites are 1021 and 1032. But the court doesn't note that there is a mandatory reciprocity in 1717 that doesn't exist in 1021 or 1032. So one cannot say that those code sections together somehow equal attorney's fees, meaning if in 1717, if both parties have not signed the contract, then you don't get attorney's fees. However, the court said, well, in this case, we have some oddities, which we do. One of the oddities is the debtor in state court was found to be an alter ego of the signatory to the contract. Now, the signatory to the contract is a company called TOIX, T-O-9. T-O-9 called itself not a contractor, called itself an owner-builder. Now, the court of appeal in the state court found that T-O-9 could not be the owner-builder because it didn't have a license, didn't have a contractor's license. It was building nine homes, offering them for sale within one year, and it did not have a license. The contract that was prepared by TOIX says we have a subcontractor, my client, Asphalt Professionals, the paving contractor, and we have the owner-builder, TOIX, and we have the contractor. And as even Judge Kaufman agreed, the contractor is never identified. The court of appeal in the state court agreed the contractor is never identified. So who is it that signed the contract? Well, why would you not apply that same reciprocity principle to the other two code sections that is applied in 1717? Let me ask it differently. Are there any cases that say you don't apply the reciprocity principle in those other two sections that you would apply under 1717? Yes. Let me try that first. Go ahead. Yes. Two cases, Your Honors. One is the Reynolds case, and the other is the Exerbe case, which is spelled X-U-E-R-E-B, both cited in our brief. Those two cases say that if you're going to apply the 1021 or the 1032, it applies to signatories. Well, that's a different question. I mean, the question that I think I heard Judge Farris asking, is there a doctrinal difference between enforcing these rights between 1717 and 1021? What 1717 says is if you're lucky enough to get somebody else to agree to pay your fees, it's going to work both ways. Correct. Right. What 1021 says, you can contract for this, right? Except that 1021 applies to costs. It doesn't apply to attorney's fees. Oh, I wouldn't spend a lot of time on that if I were you. It uses the word cost. Yeah, but if you read the whole section, I think you can get to fees. But just assume I'm right about that for a second. Is this just a question about who's a signatory? Because doctrinally, there's no difference between 1021 and 1717, right? That's the question. It is a question of can you call a non-signatory to a contract, somebody who completely does not sign the contract, who happens to be an alter ego, is that person close enough to the contract to say, well, you're covered by 1717 or by 1021 or by 1032? But the answer wouldn't be different between 1717 and 1021, would it, or would it? And they all say no. Okay. They all say no. 1717 says you've got to sign. 1021 says you've got to sign. 1032 says you've got to sign. Now, Judge Kaufman said, well, but we have to look at the fact that Mr. Davis, the debtor, was found to be alter ego of TOIX. And Mr. Forsley will say in a few minutes that that means that he's essentially a party to the contract. The Court of Appeal did not say ever that Mr. Davis was a party to the contract. The next argument will be, well, the state court found that he breached the contract. We pled in our pleading that he breached the contract. It was an alternative pleading, which never reached the surface. It was simply alternative. And our position was Mr. Davis didn't breach anything. TOIX breached the contract. Mr. Davis couldn't have breached the contract because he wasn't a party to the contract. The only entity that breached the contract was TOIX, T-O-9. And I couldn't get Judge Kaufman to agree with me on that particular argument. But the problem is that alter ego, as I think we all know, is not a good thing. It's a bad thing. Alter ego suggests that you did something wrong, that you're hiding behind an entity that doesn't really exist or you're using it as a shield to stop yourself from liability, which is exactly what the Court of Appeal said Mr. Davis was doing. He had 25 of them, 25 LLCs, all of which were used interchangeably to hide from liability. Let me take you back a step or two. Did I hear you say that 1717 is not available to a non-signatory? Because I think there's cases that say the exact opposite. 1717 says that in order to have attorney's fees, you have to either be a party to the contract or you do have to be close enough that you are essentially a third-party beneficiary. Okay, so non-signatories can be held liable under 1717 in some circumstances. In some very limited, the cases say very limited. Why would you not apply that same limited set of circumstances under the other two sections? Because the other two code sections do not have the reciprocity requirement. The other two code sections do not say you've got to have somebody who signs. They only apply, and the case which I've cited in my reply brief on page 10 and page 13, the Reynolds and the Exurb case both say if you are not a signatory to the contract or a third-party beneficiary, you don't get the benefit of 1717. And again, the argument is, well, Mr. Davis was a third-party beneficiary. Well, in order to be the third-party beneficiary, the contract had to have been made for your benefit. Let me ask you about that because in your complaint, I think in both state and federal court, you alleged several times that T.O. and Davis were parties to the contract. You didn't just make an alter ego. You said they were both signatories. And yet that was an alternative argument, and I've cited cases in my brief which indicate and hold that it takes more than just alleging it. It takes more than arguing it. You have to actually get some benefit from it. You can argue all kinds of alternative reliefs, but until you actually get a benefit or you go so far that you receive an award or a judgment or something against that party, you can argue it, but then you can move to your alternative theory, which is exactly what we did. On which theory did you get your $1.65 million of attorney's fees in the state court case? Only against T.O. 9. Only against T.O. 9. That was not against Davis? Davis was found to be an alter ego along with 13 other defendants, and the other alter egos paid the money, not Mr. Davis, but certainly T.O. 9 was the only party that breached the contract. The other parties were simply found to be alter egos of T.O. 9 and therefore responsible for the debts of T.O. 9 since T.O. 9 was a shell. It was a hollow corporation. Are you saying that there's no circumstances under California law where you can't just simply, rather than having the liability flow in one direction, the alter ego theory as you're describing it, are there no circumstances under California law where you can truly disregard the separateness of the entities and truly fuse them together? Is that an impossibility under California law? I'm not following what you're asking. Well, I think what you're saying about the alter ego is the alter ego becomes liable for the other person's debts, right? Yes. But not the other way around. Correct. Is that the only possibility? Are there circumstances under California law where you can truly fuse the two together and liabilities and assets are all combined? No. I'm not aware of any such ruling that says. Well, here's the problem, I think, or part of the problem. As a former California lawyer, I'll just express an opinion here. The alter ego result is weird in the sense that you go all the way through a trial, you prove whatever you prove in the trial. Correct. Wholly apart from that, you by motion say, and somebody else ought to be liable for this, right? In this case, we didn't do it by motion. It was actually the case. Well, but you have the ability to do it by motion. So it is a procedurally unusual device. The question is, does that foreclose the possibility that you had the opportunity to prove somebody else was liable, somebody else was a party, and that they should be responsible? And the answer is no. I mean, I don't know what you did prove, but the fact that you can do it later by motion doesn't mean that something dispositive can't happen in a trial. No, we actually did it during the trial. The trial was trifurcated. But you hear what I'm saying. I mean, it's a weird procedural glitch, I think, personally, in the California statutes. And our trial court judge, Judge Reeser, said in his career he has found alter ego three times. That's not the question. The question is, did he find, could he or she have found liability on some other basis? You know, putting aside alter ego, this person simply is liable for this. No. Okay. That's the question. It was only alter ego. Without alter ego, we have nothing. We only have T09. Well, then you, okay. If you stop now, you've got four minutes. Okay. I'll reserve. Your Honors, when we look at the alter ego. I want you to pick that up. Oh, I'm sorry. Thank you. Speak into it. Tell us who you are and who you are representing. Yes. My name is Alan Forsley, and I'm representing Mr. Davis. When we look at the alter ego, the finding of the alter ego, that's the key here, because what was the result of that alter ego? And if we look on their Sonora Diamond case versus Superior Court, the California Supreme Court case, the effect of that alter ego is we disregard the corporation, and the acts of the corporation become that individual. So what the court is saying in that opinion is that Mr. Davis became a party to the contract. He became a part of the contract once that alter ego finding was held in the state court, and as a result, that's how he became liable for $1.65 million in attorney fees. He became a part of the contract. So just looking at that, he can recover on that without being a signatory. It's just he's an alter ego of the contract. They allege he was a part of the contract, and that was the state court finding. Do you have a case, I mean, the alter ego, as it's being described by Mr. Bowen, is a person who becomes liable under the contract. Do you have a case where an alter ego is permitted to enforce the contract against the other side to the contract? Can you cite us a case saying that? Well, not off the top of my head, but there is some authority where parties have used offset, for example, a guarantee to say that, for example, well, I'm a guarantor, and they're saying, well, this is a sham guarantee because you've already determined I'm the alter ego. So it has become effective in that. So it's saying, you know, can it be used as a sword? And, yes, it has been used as a sword, and there is some authority saying that, yes, if you're the alter ego, then that gives you a basis to say that the guarantee is a sham because you're one of the same. You know, another problem with the doctrine, I think, is it's kind of broad. I mean, it can encompass, you know, you can think of it as a spectrum. Everything from somebody defrauded somebody by the principle of a company saying something that somebody else relied on, for example, to you didn't have enough board meetings, right? I mean, because the doctrine basically is that there's a unity of interest between two parties, and it would be unjust not to hold the other party responsible for the debts of the first, right? That's the doctrine. Right. Within that, there's all the, and what we're trying to figure out is, okay, where does that get you? Is it just a matter of at the end of the day, you can say somebody should be liable for something, or is it deeper than that? Well, at the end of the day, once you get, I agree that the alter ego findings, they're very broad, and judges differ on what they need in terms of finding what somebody needs to be an alter ego. At the end of the day, once you, the judge has determined there's an alter ego finding, you are determined to be a party to that contract. And as a result, for that particular claimant, that particular plaintiff, not as to other debts and appropriations. I mean, wouldn't it be fair to say under most readings of alter ego, you are determined to be somebody who ought to be liable for a debt? I'm sorry, I didn't hear you. Wouldn't it be fair to say that you are determined to be somebody who ought to be liable for a debt? Whether you're a party to a contract, I mean, what I, I'm trying to make this distinction because I think it's important to Bowen that there's a difference between those two. So why should you be a party to the contract? Because you are liable for that particular debt. Because you're liable for the debt, and that's the same thing. Yes. Okay. And bear in mind, again, the court said we disregard the acts of the corporation. So if you're disregarding the acts of the corporation, whose acts were they to enter into that contract? Well, it's the individual. And so just as a matter of law, it has to happen that way. Because, again, the corporation, it doesn't exist. It's just the individual or individuals entered in that contract. But there are other reasons that the court can also support, affirm this particular decision. And, for example, judicial estoppel. For eight years, they alleged in the bankruptcy court that Mr. Davis is a part of the agreement, and they took the alter ego findings that they alleged even years before that, five They alleged that Mr. Davis was a part of the agreement. They got the alter ego findings, and they used those findings by getting the $1.65 million in fees. They're paid the $1.65 million in fees. Now, when they get an adverse ruling, they say, oh, whoa, whoa, wait a minute. Now Mr. Davis is no longer part of the contract. That's unfair. When the deal doesn't work out for them, they don't want it. And when the deal worked out for them, they took advantage of it, and they recouped $1.65 million in fees. So just on judicial estoppel, that there should be a stop from asserting that Mr. Davis is not a part of the contract. And if we look at the cases on the Civil Code 1717 cases, yes, Mr. Davis does not have to be a signatory to the contract. The court looked at those cases and said, well, look, yes, we've got that it applies to Civil Code 1717, but the same reasoning applies to California Code of Civil Procedure 1021, that had asphalt professionals prevailed in its action against Mr. Davis for under 523A2A, it would have received its attorney's fees. And since it would have received its attorney's fees, Mr. Davis is entitled to his attorney's fees. This court can also affirm this decision on the third-party beneficiary. As a result of Mr. Davis, again, the acts of the corporation are gone, so now Mr. Davis is a part of the agreement, and he's determined to be the owner in the agreement itself. And the agreement specifically provides that the owner is a third-party beneficiary entitled to the rights under the agreement, in particular the attorney's fee provision. The court promptly found that he could recover under that section as well. And the other part is the court's finding that Mr. Davis is a party to the agreement is abuse of clear error, and the court cobbled all of the information, the facts, and looked at all of the state court findings and all the findings inside of the trial, and so the court's ruling on Mr. Davis being a party to the agreement so that he can recover attorney's fees is supported by the record. Is that a clear question of fact and nothing else in your mind? It's not a question of law and fact? Well, once the determination whether he's a party to the agreement, to me, is just a question of fact, but then whether he can recover the attorney's fees under the agreement itself becomes a question of law. I have nothing further unless some questions by the panel. Thank you, counsel. Thank you. Thank you. Three minutes and 56 seconds. Thank you. I'll start where counsel started. Sonora Diamond I have cited and its related cases on page three of my reply brief, and I went through and read every single case that counsel cited. They're all listed on page three. Not one of them, not one of them says that an alter ego becomes a party to an agreement, not one. I'll represent, as an officer of this court, not one of the cases cited by counsel say a party to an agreement becomes a alter ego finding equals a party to a contract. It simply doesn't exist. It does not exist. You don't get a benefit by being an alter ego. It's a bad thing, and your honors indicated something that the Court of Appeals said that's very important. The court not only said that it would be unjust to hold a party, not to hold a party liable in an alter ego setting, the court said if we refused to hold Mr. Davis and the other 13 defendants liable, it would be tantamount to sanctioning a fraud. This gets back to the grounds for alter ego. There are actually 17 grounds. It's a very, very difficult test, and it includes all kinds of mismanagement, self-dealing, these people writing checks themselves, buying Corvettes, buying Harley Davidsons with corporate monies and no accounting. They had employees who were working for one company paid for by another company. The workers' comp was paid for by another company, and yet these people, the judge said, I would be sanctioning a fraud because that's what these people are doing. They have a shell game trying to hide from liability while they're taking everything they want out of the corporation that's good and leaving nothing behind. And when Mr. Davis was asked why do you do this, he said we do it to avoid liability. It's what everyone does. Isn't that what everyone does? That's why we do it. We have all these LLCs, and when one gets in trouble, we close it down and we move on to the next. That's why they had 25 LLCs, none of them with a license to do business. Why else would anyone form an LLC or a corporation? Isn't that what it's all about? Unless you cross the line. If you cross the line and you deplete that LLC or corporation so that it has no assets, when the individuals you do business with think it's a viable entity, you've crossed the line, and that's the finding of alter ego, which is tantamount to fraud. I also wanted to point out that the judicial estoppel arguments are on page 8 of my reply brief, and judicial estoppel simply doesn't apply here, simply does not apply. You can't say that you're estopped. Even if you've made an argument for eight years, as Your Honor's note, the case is still going on. This case is the oldest case in Ventura County history. It started in 2005, and we haven't even got to phase 3 yet. It hasn't been scheduled. My client yesterday said if I had a child that was born when this case was filed, he'd be ready to go into high school this fall, which is true. The case is going on. So I can't control that. I can't control when we get to court. We've been to the court of appeal multiple times, and we've prevailed. So you can't tell me that it's my responsibility and I'm now responsible for judicial estoppel when I've tried to advance these arguments as quickly and as effectively as possible. I just wanted to get to the third-party beneficiary argument that counsel made, and, again, the third-party beneficiary requires that the contract be for the benefit of Mr. Davis. This contract was not for his benefit. Sure, in the overall picture, he was going to benefit by being able to essentially rape and pillage the company, but it was not for his specific benefit, which is a requirement of third-party beneficiaries. Unless Your Honors have questions, I appreciate your time. You're listening to me, and it's not easy, but it's a very important issue, I think, for all practitioners, is are you going to be hit with 523 damages when you go after somebody who is an alter ego and somehow you don't prevail? Thank you. Thank you, counsel. The matter is submitted.
judges: Kurtz, Faris, Lafferty